THOMAS A. DOSIK (AK BAR NO. 9505018)
SONJA D. KERR (AK BAR NO. 0409051)
DISABILITY LAW CENTER OF ALASKA
3330 ARCTIC BOULEVARD, SUITE 103
ANCHORAGE, ALASKA 99503
TELEPHONE:   (800) 478-1234/907-565-1002
Email:        tdosik@dlcak.org
Email:        skerr@dlcak.org

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| Disability Law Center of Alaska<br>    Plaintiff,<br><br>vs.<br><br>Alaska Psychiatric Institute,<br>("API"), and Ron Adler, in his<br>official capacity as Executive<br>Director,<br>    Defendants. | **MEMO IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiff, the Disability Law Center of Alaska hereby moves this court for a Temporary Restraining Order requiring Alaska Psychiatric Institute ("API") to turn over to Disability Law Center copies of all video surveillance footage and other documentation regarding an incident which occurred on March 5, 2005. This motion is supported by the affidavits of Josh Fink, the Director of the Office of Public Advocacy of the State of Alaska, ("OPA") and David Fleurant, the executive director of the Disability Law Center of Alaska ("DLC").

## I. INTRODUCTION.

At approximately 5:00 p.m. on March 5, 2006, API discharged a patient named Stephen Jenkins against his will. Mr. Jenkins was forcibly dressed, placed in a

wheelchair and wheeled to the main entrance of API. Mr. Jenkins then undressed himself and refused to leave. In response API staff forced Mr. Jenkins out the door, threw his clothes out after him and locked the door behind him. Mr. Jenkins wandered around outside—naked, in March, in Alaska[1]—until he was picked up by the Anchorage Police Department, because he was causing a traffic disturbance. The Anchorage Police officers took Mr. Jenkins to Providence Hospital. From Providence, he was returned to API.

API has a video surveillance system that monitors, among other areas, the main entrance to the facility. The images from this system are digitally recorded, and retained for thirty days before disposal. Pursuant to its federally mandated function to investigate instances of abuse and neglect, the DLC needs to obtain a copy of the video footage to determine if Mr. Jenkins was indeed subject to abuse during this incident at API. DLC also has reason to believe that if, given the opportunity, there is a significant chance API will alter or destroy the video record.

## II. THE DISABILITY LAW CENTER.

The Disability Law Center of Alaska is an independent, private, nonprofit agency established in 1978 pursuant to the Developmental Disabilities Assistance and Bill of Rights Act. 42 U.S.C. § 15001 *et seq*. ("DD Act"). Part of the DLC's mandate, as the Protection and Advocacy System ("P&A") for Alaska is to investigate instances of abuse and neglect in institutions within the state which serve people with mental and physical disabilities. In order that the P&A's can fulfill this function, Congress granted the P&A's authority to access the records of facilities which serve the disable

---

[1] According to the Anchorage Office of the National Weather Service Forecast Office, the temperature never got above freezing on March 5, 2006.
*http://pafc.arh.noaa.gov/climate.php?climstn=PAFC&climmo=3&climyr=2006*

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002   Fax 907-565-1000
1-800-478-1234

population. When the P&A has probable cause to believe that abuse or neglect has occurred, the regulations allowing access to records to conduct an investigation are triggered.

In the DD Act Congress mandated that each state receiving DD Act funds establish such a protection and advocacy ("P&A") system to protect the rights and interests of persons with developmental disabilities. DLC is the advocacy system for the State of Alaska. The authority for establishment of the P&A for Alaska can be found at AS 47.80.020. Congress subsequently expanded the responsibilities of the existing P&As to advocate for all persons with mental illness, under the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et seq*. Most recently, Congress authorized P&As to advocate on behalf of persons with physical and other disabilities not covered under either the DD or PAIMI Acts; this authority is provided under the Protection and Advocacy of Individual Rights ("PAIR") Program of the Rehabilitation Act, 29 U.S.C. § 794e. Congress intended that the authorities under the DD, PAIMI and PAIR laws be applied in a consistent manner. The PAIR Program expressly incorporates by reference (at 42 U.S.C. § 794(e)(f)) the authority regarding access to facilities and records for the purpose of investigating abuse and neglect (which is discussed below) set forth in the DD Act.

Courts have uniformly held that the P&A access authorities requires facilities to permit the agency to operate effectively, and with broad discretion and independence in gaining access to facilities and records for investigative purposes. *See, e.g., Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3rd Cir. 2000); *Alabama Disabilities*

*Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995), aff'd 97 F.3d 492 (11th Cir.1996); *Mississippi Protection & Advocacy System, Inc. v. Cotten*,1989 WL 224953 (S.D.Miss. 1989), *aff'd*, 929 F. 2d 1054 (5th Cir 1991); *Robbins v. Budke* 739 F.Supp. 1479 (D.N.M. 1990); *Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1202 (W.D. Mi 1994); *Maryland Disability Law Center, Inc. v. Mount Washington Pediatric Hospital, Inc.*, 106 Md. App. 55, 664 A. 2d 16 (Md. Ct. of Special App.1995).

Under the statutes, probable cause to suspect abuse or neglect is a basis for triggering access to records. The DLC has probable cause in this case to suspect that abuse and neglect of a patient occurred at API. The DD and PAIMI Acts contain nearly identical definitions for the term "probable cause." The DD Act definition at section 1386.19 states that:

> Probable cause means a reasonable ground for belief that an individual with developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

The PAIMI Act regulation (section 51.2) is very similar, except that it refers to a "significant" risk of abuse or neglect:

> Probable cause means reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002   Fax 907-565-1000
1-800-478-1234

The standard for probable cause is met here. The DLC received information from reliable sources that API staff left a mentally ill person outside in sub-zero temperatures.

Although the staff was kind enough to throw Mr. Jenkins' clothes outside with him, this does not ameliorate the danger they placed him in.

Pursuant to an investigation into abuse or neglect allegations, information in possession of a facility including reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, and related assessments prepared for a facility by its staff, contractors, or related entities;[2] and information in professional, performance, building, or other safety standards, demographic or statistical information relating to a facility. DLC has the authority to access the records listed above, whether written or in another medium, draft or final, including but not limited to handwritten notes, electronic files, photographs, videotapes, or audiotapes. [3] In this case, key information is the security videotape believed to exist at this point.

## II. Standards for Temporary Restraining Order.

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order may be granted without notice only if (1) it clearly appears from specific facts that shown by affidavit that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition, and (2) the applicants' attorney certifies to the court in writing the efforts, if any, which have been

---

[2] 45 C.F.R. § 1386.22(c)(1); 42 C.F.R. § 51.41(c)(4); *Pennsylvania Protection and Advocacy, Inc. v Houstoun*, 228 F.3d (3d Cir. 2000) (P&As are entitled to access "peer review" records despite state law restrictions on their disclosure); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) (same holding).
[3] 45 C.F.R. § 1386.22(c)(2); 42 C.F.R. § 51.41(c)(5).

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002   Fax 907-565-1000
1-800-478-1234

made to give notice, and the reasons supporting the claim that notice should not be required. Both of these requirements are satisfied here.

### A. Irreparable Harm.

The Disability Law Center, and the individuals with disabilities that DLC is mandated to protect, will suffer irreparable harm if the ex parte order is not granted. DLC has reason to believe that the video recording necessary for its investigation will be compromised or destroyed if API is given the opportunity. API cannot, in this instance, be requested to provide the videotape without potential compromise of the investigation DLC is legally mandated to conduct. If, as DLC has reason to believe, the mere requesting of the video records could or may result in their destruction, it is incumbent upon DLC to take all steps to prevent that from occurring to ensure that its investigation is full and fairly conducted. DLC also bears the risk that potential actions which might abate or punish the alleged abuse or neglect may be lost due to delay, action, or inaction of the party currently in possession of the records. Perhaps most importantly, the residents on whose behalf DLC must act bear the risk of injury or death while DLC attempts to timely complete any investigation which might be delayed due to the lack of records which are, at this time, at risk of destruction.

As the affidavit of Joshua Fink shows, two long term employees of API, who are aware of the practices, procedures, and culture at API have expressed grave concerns regarding retention of the videotape that may incriminate API, or demonstrate complicity in abuse of patients at API.

### B. Contact with Opposing Party.

For the reasons explained above, the DLC has not contacted API or its attorneys regarding this matter.

### C. Adequate Protection.

Civil rule 65(c) requires that, before a restraining order or preliminary injunction can be issued, the applicant must give adequate security for any damages a party who is found to be wrongfully enjoined or restrained may suffer. In this case there is absolutely no potential that API will suffer any damages from being required to turn over the video footage. The monetary costs of making a copy of the footage should be minimal, if any. The video footage sought is from a camera placed in the main entrance of API, which is a public place, not a private room, and should not contain private medical information subject to the various state and federal privacy laws. Moreover, if the Court has concerns regarding the propriety of requiring API to release the video record, the Court may offer protection to API by requiring API to turn over the video record to the Court, rather than the DLC. In this way the video record can be preserved, and API will have the opportunity to fully present its arguments to the Court before any information is released to the DLC.

## IV. CONCLUSION.

The DLC respectfully requests that this Court enter an ex parte order requiring API and Ron Adler to turn over to DLC a copy of the video record of the incident of March 5, 2006 involving Stephen Jenkins. The DLC is entitled to this record pursuant to its federally granted access authority to conduct an investigation of an incident of abuse and neglect. In the alternative, DLC requests that this Court enter an order requiring API and Ron Adler to turn over the video record to this Court, for in camera

inspection and safekeeping, until such time as API and Ron Adler have had time to review and make any opposition they might have to releasing the video to DLC.

Done this 22 day of March, 2006.

_____
THOMAS A. DOSIK (AK BAR NO. 9505018)

_____
SONJA D. KERR (AK BAR NO. 0409051)
DISABILITY LAW CENTER OF ALASKA
3330 ARCTIC BOULEVARD, SUITE 103
ANCHORAGE, ALASKA 99503
TELEPHONE:   (800) 478-1234/907-565-1002
Email:       skerr@dlcak.org
Email:       tdosik@dlcak.org

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002     Fax 907-565-1000
1-800-478-1234

DLC v. API
MEMO IN SUPPORT OF EX PARTE
MOTION FOR TEMPORARY RESTRAINING ORDER

Page 8 of 8