IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABLE LAW CENTER OF ALASKA,<br><br>           Plaintiff,<br><br>  vs.<br><br>ALASKA PSYCHIATRIC INSTITUTE, and RON ADLER, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR,<br><br>           Defendants. | Case No. 3:06-cv-0062-TMB<br><br>O R D E R |

### INTRODUCTION

Plaintiff, the Disability Law Center of Alaska ("DLC"), moves ex parte for a temporary restraining order requiring Alaska Psychiatric Institute ("API") to turn over surveillance footage recording an incident that occurred on March 5, 2006, at approximately 5:00 p.m. The footage, DLC argues, shows abusive conduct by API employees and is central to its investigation of API's practices.

### DISCUSSION

Federal Rule of Civil Procedure 65(b) provides in relevant part:

A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b). Ex parte restraining orders are appropriate only when immediate relief is necessary. *See* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, Civil 2d § 2951. The purpose of a temporary restraining order is to preserve the status quo, pending a more complete hearing.

The standard for issuance of a temporary restraining order is similar to the standard for preliminary injunctions. The Ninth Circuit has outlined the test for preliminary injunctive relief as follows:

> In this circuit there are two interrelated legal tests for the issuance of a preliminary injunction. These tests are not separate but rather represent the outer reaches of a single continuum. At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. The relative hardship to the parties is the critical element in deciding at which point along the continuum a stay is justified.

*Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir. 1983) (internal citations omitted). A review of the authorities reveals that the primary difference between a temporary restraining order inquiry and a preliminary injunction is that when evaluating an application for a temporary restraining order, the inquiry is less merits based. *See* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, Civil 2d § 2951 ("[S]everal cases indicate that the complainant must demonstrate at least a reasonable probability of prevailing on the merits. The necessary persuasiveness of this showing varies, however, and often may depend upon the facts in a particular case."). Instead, the focus is on whether the applicant is likely to suffer irreparable injury, and whether the relative hardships tip in the applicant's favor. *Id.* (citing *United States v. Little Beaver Theatre, Inc.*, 324 F. Supp. 120 (D. C. Fla. 1971) (where the government alleged the defendant was showing an obscene movie temporary restraining order was appropriate to prevent "disposing of, relinquishing possession of, or in any matter cutting, altering, splicing, destroying, or mutilating" the film)).

Here, the DLC argues that it, and the persons it seeks to protect, will be irreparably harmed unless a temporary restraining order is issued. DLC alleges that the footage shows abusive and neglectful conduct that it is currently investigating. The affidavits underlying the motion indicate

ORDER

that API has a practice of maintaining surveillance tapes for thirty days. In addition to API's normal practice with regard to surveillance tapes, DLC raises evidence spoliation concerns. The supporting affidavits contain information from persons with unique access to API practices who have suggested that the tape might be tampered with if it were simply requested from API. The Court expresses no position on the merits of the spoliation contention.

The Court recognizes that the harm that API would likely suffer in having to turn over the footage is negligible. However, DLC has not shown a pattern of practice on API's part in destroying or altering evidence. So long as the evidence is preserved, any harm that DLC would suffer in not having the temporary restraining order is ameliorated. Confiscation of property prior to a hearing always raises due process concerns. There are certainly circumstances in which preservation of evidence requires that the property be turned over by means of a temporary restraining order. Under these circumstances, however, an order requiring API to preserve the surveillance tape in its original form is sufficient to protect the Plaintiff's interests, and is more narrowly drawn to protect API's due process rights.

**IT IS THEREFORE ORDERED:**

The motion for a temporary restraining order is **DENIED**. API is ordered to maintain surveillance footage of the evening of March 5, 2006, in its original condition. Sanctions will be levied if API alters the footage in any way. The parties will appear before the Court on **Wednesday, March 29, 2006, at 2:00 p.m.** for a hearing on a preliminary injunction. Plaintiffs are directed to immediately inform Defendants of this Order.

Dated at Anchorage, Alaska, this 23 day of March 2006.

/s/ Timothy M. Burgess
**TIMOTHY M. BURGESS**
United States District Judge