DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Stacie L. Kraly
Chief Assistant Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811
Phone: (907) 465-3600
Attorney for State of Alaska
Alaska Bar No. 9406040

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABLEITY LAW CENTER OF ALASKA,<br>             Plaintiff,<br>vs.<br>ALASKA PSYCHIATRIC INSTITUTE, and RON ADLER, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR,<br>             Defendants. | Case No. 3:06-cv 00062 (TMB) |

**MOTION FOR PROTECTIVE ORDER**
**(shortened time)**

**Introduction**

      Alaska Psychiatric Institute, and Ron Adler, in his official capacity as Executive Director, requests that this court issue a protective order related to the release of the Disability Law Center's (DLC) Investigative Report (report) regarding the

March 5, 2006 incident.[1]  Specifically, API seeks a protective order that requires the DLC to use pseudonyms for all parties involved in the March 5, 2006 incident, including the doctors who have been named in the report.  We seek this motion on shortened time because of the immediacy of the events as outlined below and request that the court give the named doctors' the opportunity raise these issues before it is too late. Once the report is released with the names included, if there is a privacy interest it is lost and can never be restored.

**Factual Background**[2]

On July 7, 2006, the DLC emailed API with a copy of its report related to the March 5, 2006 incident.  The cover letter to that report indicated that the report would be released on July 13, 2006, and invited API to review and comment on the report.  API forwarded that report to the Department of Law (DOL) on July 10, 2006.  The DOL immediately requested an extension from the DLC because of previous work commitments and because the two attorneys that had been assigned to this matter had left the employment of the DOL, Civil Division, the undersigned needed some time to get familiar with the investigative process.  Ms. Johanknecht, on behalf of the DLC, agreed to give API until Monday, July 17th to respond.  A response to the report was prepared on behalf of API and was forwarded to the DLC via fax on July 17, 2006, and via email on July 18, 2006.  The response raised a number of questions and concerns, one of which was that the report identified two API doctors by name.  API stated in its response that it

---

[1]     Ex. A.  As explained in the factual background of this motion, the DLC agreed to issue its report with the doctors' names redacted and an explanatory footnote if API decided to file a Motion for Protective Order.  API informed DLC that it would be filing this motion and DLC requested that API attach their final report as the exhibit.

[2]     *See* attached Affidavit of Stacie Kraly.

believed that using the doctors' names was not necessary to the substance of the report and requested that the DLC remove the names of the doctors. If the DLC would not do that, API requested that the DLC notify the DOL, prior to the release of the report, so that a protective order could be filed with the court. At 1:16 p.m. on July 24, 2006, the undersigned received an email indicating that the DLC would be releasing the report July 25, 2006, and requesting to forward any authority or case law be sent to them before that time in support of API's request to remove the doctors' names from the report. At about 3:00 p.m. on July 24, 2006, the undersigned requested a teleconference to see if the parties could resolve these matters prior to the release of the report. Between 4:00 and 5:00 p.m. on July 24, 2006, the undersigned attended a teleconference with Holly Johanknecht and Sonja Kerr, and Kelly Henriksen from the DOL. The undersigned provided the DLC with the DOL's opinion that releasing the names of the doctors could result in legal action for violation of common law and constitutional privacy rights and for damages to the doctors' professional reputations. The undersigned requested that the DLC release the report without the doctors' names. After considerable discussion, the DLC agreed to allow API until noon on July 25, 2006 to file a motion for a protective order. The DLC indicated that if the motion for protective order was filed, it would release the report shortly after the noon hour, with a footnote that the names of the doctors had been redacted because API filed a protective order.[3]

---

[3]  The motion was filed after the noon hour because of the DLC's request that API use the final report as an exhibit. However, the final report was not received by the DOL until after the DLC indicated that it would be releasing the report with the names because API never filed its motion, in contravention of what the parties agreed to. API files this motion in good faith with a redacted report attached based on the parties' original agreement that DLC would release a redacted report after API filed its motion.

This brings us to the instant motion – whether the court should issue a protective order to preclude the DLC from using the doctors' names in their report.

**Argument**

Although the parties are not engaged in formal discovery, API believes this motion for a protective order is the most appropriate mechanism to seek the court's assistance in resolving this dispute because the report that is being released is the result of a process analogous to the discovery process in civil litigation.[4]

The court has the discretion to issue a protective order upon a showing of good cause.[5] There is good cause to grant a protective order in this matter because the potential damage to the doctors' reputation and violation of common law and constitutional rights of privacy far outweigh any purpose in including the doctors' names in the report. Additionally, the report is not diminished in any fashion by removing the doctors' names and using pseudonyms.

The purpose of the DLC is to advocate for systems changes to help protect the mentally ill. API accepts this charge and mandate but does not believe this charge and mandate requires the use of the doctors' name in the report. There is no dispute that the DLC has the ability to investigate an allegation if they find there is probable cause that abuse or neglect has occurred. There is no dispute that the DLC can issue a report related to that investigation and make findings and recommendations in that report. The statutes and regulations governing the DLC indicate a purpose to provide oversight and input in to system changes that will benefit all persons suffering from mental illness. Despite having concerns over some of the report, API acknowledges that DLC has the right to make such

---

[4]   See Federal Rule of Civil Procedure 1

[5]   *See*, Federal Rules of Civil Procedure 26(c).

findings and recommendations. API has the right to disagree with the findings and recommendations. What is at issue here is whether the doctors' names are necessary to make those findings and recommendations. The use of the doctors' names does nothing to promote the ultimate conclusions in the report. Thus, the names are not necessary to meet the DLC's purpose and mandate.

In informal discussions related to the use of the doctors' names, the DLC argued that nothing in their enabling statutes or regulations requires them to protect the names of the doctors who work at API. API agrees with this position, but argues there is also nothing in their enabling statutes and regulations that mandate or require that they release the report with the names of the treating physicians. Therefore, they could choose not to use the doctor's names.

There may be instances where it is necessary or appropriate to include the names of the doctors or other employees of an institution; but that is not the case here. For example, it may be necessary or appropriate to include the names of individuals in a report where there was a concrete allegation of abuse or neglect on the part of the particular individual, rather than an allegation of system failure and the lack of policy and procedures, such as what is alleged here; or, where an individual was the subject of an adverse action and/or investigation related to their licensure, which is not the case here either. The allegations here, and the findings and recommendations in the report, do not support the use of the doctors' names.

In the report, the first reference to one of the doctors is found in a footnote in the "executive summary" and the remaining references are found in the body of the report in the section titled "sequence of events."[6] There is no reference to the doctors in

---

[6]    Ex. A, pages 5, 8 and 21 respectively.

the substantive portions of the report. The final reference related to API is in the final recommendations regarding the lack of community resources. The use of the doctors' names does not add anything to the report other than to implicate the doctors.[7] There does not seem to be any need for or relevance to naming these individuals other than to embarrass or implicate them as "bad actors" in this event. This is a reasonable conclusion, since the report does not name any other person who was working at API (except the CEO Ron Adler) at the time of the event. API submits that the use of individuals' names, including the doctors' names, serves no purpose in this report; the use of the names is unnecessary and is only used to implicate the doctors as the cause of the event despite the fact that the remainder of the report does not support this conclusion.

Additionally, the potential for harm to these doctors by releasing the report with their names it is manifold; it could violate the doctors' constitutional and common law right of privacy, and could result in unnecessary and unwarranted damages to the doctors' reputations. Moreover, the use of the doctors' names could have a chilling effect on API's ability to attract and retain qualified doctors, thus diminishing the states capability to protect and care for mentally ill individuals in Alaska.

Again, except for naming the doctors, the entire report is written without identifying any other person who was involved in the incident. Giving the name of the doctors implicates the doctors as the parties responsible for the events that transpired on March 5, 2006. This implication can be very damaging to the doctors and cause their professional license to come under sanction, scrutiny, or investigation. To compound this further, if a physician's license is investigated, this report and ensuing investigation becomes part of their permanent record and the doctors are then required to report and

---

[7]  Ron Adler is identified in the report and that identification is not at issue.

explain this for the remainder of their careers. As such, the release of the doctors' names can have a devastating effect to the doctor's professional reputations. This is especially so when the report does not make any specific allegations or findings related to the doctors and this incident.

Even though the DLC has authority to investigate and publish reports, it can not exercise that authority in a manner that violates the constitutional rights of others---here the two doctors.[8] API submits that the court will have to do the same kind of balancing of the API doctors privacy interests with that of the DLC as the Alaska Supreme Court did in *Falcon*. That can be done later. However, an order must be entered now to preserve the issue. Otherwise the damage to privacy rights will be done before the doctors have a chance to protect themselves.

If the purpose of the report is to identify systemic problems with the provision of services at API and in the community of Anchorage, then the identification of the doctors serves no purpose. The potential damage to the doctors' reputations outweighs the DLC's interest in naming these individual doctors. Under these facts, good cause has been shown and a protective order should be granted.

**Conclusion**

API has demonstrated that good cause exists to grant a protective order in this instance. As such, API requests that the court issue a protective order stating that no doctor or employee may be identified in the report; rather any reference must be made using pseudonyms or general references.

Dated this 25th day of July, at Juneau, Alaska.

DAVID W. MÁRQUEZ

---

[8] Cf. *Falcon v. APOC*, 570 P.2d 469 (Alaska 1977)

                          ATTORNEY GENERAL

                By:   s/Stacie L. Kraly
                         Assistant Attorney General
                         Office of the Attorney General
                         P.O. Box 110300
                         Juneau, Alaska 99811
                         (907) 465-3600
                         (907) 465-2539
                         stacie_kraly@law.state.ak.us
                         Alaska Bar No. 9406040

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on July 25, 2006, a copy of foregoing was served electronically on the following parties of record:

Holly Johanknecht
Sonja Kerr, Esq.
Disability Law Center of Alaska, Inc.
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

_____
s/Stacie L. Kraly