Sonja D. Kerr AK Bar No. 0409051
Holly J. Johanknecht AK Bar No. 0511103
Disability Law Center of Alaska
3330 Arctic Blvd., Suite 103
Anchorage, AK   99503
(907) 565-1002
(907) 565-1000
hollyj@dlcak.org
skerr@dlcak.org
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Disability Law Center of Alaska,           ) | |
|         Plaintiffs           ) | |
|                              ) | |
| vs.                                        ) | Case No. 3:06-cv-62 (TMB) |
|                              ) | |
| Alaska Psychiatric Institute, and Ron Adler ) | |
| in his official capacity as Exec. Director, ) | |
|         Defendant.           ) | |
| _____) | |

**OPPOSITION TO ENTRY OF PROTECTIVE ORDER**

Yesterday, Defendants API filed a Motion for Protective Order with the Court. The Defendants assert that DLC is prohibited from releasing its investigative report in this case if the report contains the names of two doctors who work at API. The Court must deny the motion for the reasons cited below.

**FACTS**

The facts necessary for a determination of this motion are not really in dispute. Defendants concede that DLC has the right and authority to issue a public report about the incident that sparked this litigation – the improper discharge of the victim from API. Def. Memo, at pg. 4. Defendants also concede that the only portion of the report for

which they seek a protective order, is the names of two doctors. Def. Memo, pg. 5[1]. One doctor is API's medical director, Dr. Hopson[2]. The other doctor is a staff psychiatrist, Dr. Khari. Both were involved in the incident. DLC staff interviewed both doctors and the references to the doctors and their actions in the report come directly from those interviews. *Affidavit Ex. A, Investigation of Improper Discharge at API, July 25, 2006, Unredacted Version, pg. 8; Affidavit Ex. B, Investigation of Improper Discharge at API, July 26, 2006, Redacted Version, pg. 8.* The only difference between the two reports is the inclusion or removal of the names of the doctors, and a footnote to that effect.[3]

At this juncture, DLC on July 25, 2006, at approximately 4:20pm, before receiving any notice that the Motion for Protective Order was being filed, released the report with doctors names only to Ron Adler, Executive Director of API; Ms. Kraly, and the Commissioner of DHSS and various relevant employees in the Department of Health and Social Services and the Department of Public Health. *Affidavit Ex. C, List of Recipients Sent Non-Redacted Report on July 25, 2006.* At 4:45pm on Tuesday, July 25, 2006 API's Motion for Protective Order was filed.

Today, DLC is releasing the report in redacted format, as agreed, now that the Motion for Protective Order has been filed, to other sources, including the Governing Board of API, and placing same on its website. *Affidavit Ex. D, List of Recipients Sent Redacted Report on July 26, 2006.*

---

[1] This statement made in API's memo is in direct contradiction with API's proposed order filed with the court that states that the report "shall not include the real names of the doctors or any employees at API." As Ron Adler, is an employee at API, the inclusion or removal of his name from the report is presumably intended to be included in the proposed order. Regardless of the court's decision regarding the inclusion or removal of the doctors' names from the report, Ron Adler's name should remain included in the report.
[2] Dr. Hopson, as API's medical director is a public figure and his name is a matter of public record. DLC argues that regardless of the court's decision regarding the inclusion or removal of Dr. Khari's name, Dr. Hopson's name should remain in the report.
[3] DLC also dated the reports and included DLC's contact information on the cover page.

Opposition to Entry of Protective Order                                     Page 2 of 9
Case No. 3:06-cv-00062 (TMB)

**ARGUMENT**

### I. API's Motion is an Inappropriate Application of Federal Rule of Civil Procedure 26(c).

API's request for a Protective Order under FRCP Rule 26(c) does not meet the procedural or substantive requirements for a protective order under that rule. Def. Memo. pg. 4, footnote 3. A Protective Order under Federal Rule 26(c) is appropriate only when the parties are engaged in discovery.[4] That is not the case here. The State's motion is an inappropriate application of FRCP 26(c). For this reason alone, the Court should deny the motion. API's request of the Court that DLC be restrained from issuing its investigation report with the doctors' names included should have been brought pursuant to FRCP, Rule 65, for either a Temporary Restraining Order or a Preliminary Injunction. However, as explained below there are additional reasons to deny the Protective Order.

Even if the court were to liberally view API's motion as one for a TRO, API has not met the standards to obtain such an order. In the 9th circuit, there are two different standards that can be used by a Court in TRO.[5] The first test, the "four factor test" requires a party seeking a TRO must meet four factors to obtain a TRO and API cannot meet those factors. *National Services Group, Inc. v. Painting and Decorating Contractors of America*, 2006 WL 2035465 (9th Cir. 2006); *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005).

---

[4] Federal Rule of Civil Procedure 26 is titled, "General Provisions Governing Discovery; Duty of Disclosure"

[5] These two alternatives represent 'extremes of a single continuum,' rather than two separate tests. Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be established by the party. *Clear Channel Outdoor Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir.2003).

First, API must show a strong likelihood of success on the merits. *Id*. API cannot meet that standard because there is no likelihood of API prevailing on its claim that DLC cannot include the doctor's names. The second factor to consider is the likelihood of irreparable harm if relief is not granted. *Id.* API cannot meet the standard of irreparable injury if the relief is not granted. In fact, API has not even alleged an irreparable injury. The third factor for consideration is a balancing of hardships that favor the moving party. *Id*. The balance of the hardships does not favor API, but DLC. API has not proven any concrete hardships resulting from the release of the report with the doctors' names. Finally, courts in the 9th circuit have given consideration to the public interest. In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff. *Fund of Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *Carribean Marine Servs. Co., v. Baldrige*, 884 F.2d 668, 674 (9th Cir. 1988).

No public interest is served by protection of the medical doctors who were involved in this matter. Rather, the public interest is advanced by the release of the doctor's names so that other consumers of API may be aware of the fact that the two doctors involved and their actions in treatment of a person with mental illness. The public interest favors protection of the public – namely, individuals with mental illness whose rights are protected by PAIMI, and who are more vulnerable than two doctors.

The second test used in the 9th Circuit is a two-factor test. *Beardslee*, 395 F.3d at 1067. This test requires the party seeking the TRO to establish either a likelihood of success on the merits and the possibility of irreparable injury or the existence of existence of serious questions going to the merits and the balance of hardships tipping

in plaintiffs favor. *Id.* API cannot meet this test either. Again, there is neither a likelihood of success nor even a probability of irreparable injury. Irreparable injury means an injury that cannot be remedied monetarily. Even assuming, arguendo, that the doctors would have some type of potential claim for release of their names (a large assumption given the lack of any specific claim or case law to support API's contention), they have a potential monetary remedy so they would not be irreparably harmed by any release.

The court must deny the motion on procedural grounds as improperly brought as a Rule 26 motion, or in the alternative, deny the motion as brought as a Rule 65 TRO motion.

**II.    DLC Has the Legal Authority and Duty to Issue the Report with the Doctors Names Included, a Protective Order would Interfere with that Right and Duty.**

DLC has the legal authority and duty to issue the report with the doctors' names. The PAIMI statute, and the regulations underlying same, governs DLC's investigation process. The PAIMI regulations specifically underscore the expectation that Protection and Advocacy offices, like DLC, will write public reports. 45 C.F.R. 51.45(b). Publishing public reports about abuse and neglect is consistent with the core functions and purposes of protection and advocacy services of the DLC. The reason, of course, is that the public has a right to know about abuse and neglect in facilities that serve persons with disabilities.

Confidentiality provisions of PAIMI do not prevent DLC from issuing a public report of the results of an investigation that maintains the confidentiality of the client or the person who reported the abuse being investigated or the names of individuals who

are residents of the same facility and who may have provided information to DLC. 42 C.F.R. 51.45(b)(1), 42 C.F.R. 51.45(a)(1). The section does not, however, require protection of the identify of a staff witness, such as a doctor, unless that person is the person who reported the alleged abuse to the PAIMI program.

There is simply no legal basis under the PAIMI regulations that requires DLC to redact the names of the two doctors involved. Nor has API provided the Court with any specific case law or statute that contradicts DLC's stated authority consistent with its mission.

### III.  DLC's Release of the Report with Names is to a Source that Has Enforcement Authority and the Protective Order would Interfere with this Right and Responsibility.

DLC has the ability to release the investigation report to various enforcement or investigative agencies, if the investigation reveals the need for corrective actions. 42 C.F.R. 51.45(b)(2). DLC has released the report with doctors' names currently, only to the Commissioner of the DHSS and other relevant state agencies. [6] Alaska law provides that the DHSS has authority to license, investigate and otherwise supervise such providers as API. 47.32.010. DHSS, for example, can establish standards for licensure and renewal of license, impose requirements, record-keeping, reporting requirements, and most importantly investigate. 47.32.030, see, 47.32.030(E)(4) and 47.32.090.

In fact, DHSS can investigate a complaint made by anyone about API. 47.32.090(b). API has a duty to cooperate if such an investigation were to be undertaken by DHSS. That cooperation includes the responsibility of API to share files of individuals, speak

---

[6] API cannot seriously claim that it would be inappropriate to send the report with names included to DHSS (the Department of which API is a part), Licensing and Certification (which has already conducted an investigation into this incident), API (which obviously is aware of the doctors' names) or to Ms. Kraly, (API's counsel).

Case 3:06-cv-00062-TMB    Document 30    Filed 07/26/2006    Page 7 of 9

to residents, inspect documents, including personnel records, and speak to staff. 47.32.100, and 47.32.110. Thus, any release of the names to DHSS is also completely consistent with DHSS responsibility to license, supervise and investigate services at API.

### IV. The Protective Order Would Interfere with DLC's Right and Duty to Release the Report to Protect the Public.

API offers no factual reasons or concrete repercussions to support its request for the protective order.[7] Other than a vague reference and assertion about a potential constitutional claim by the doctors, and an unsupported suggestion that if these doctors' names are released, API will not be able to hire other doctors, API offers no factual basis for prohibiting release of the doctors' names. DLC, on the other hand, will be harmed by the inability to release the doctors' names to the public. There are three potential repercussions.

First, any person in the public may legitimately desire the name of the doctors who may be treating their loved one. Families and friends of consumers have a right to be wary of treatment at API, given the Supreme Court's recent ruling that API has violated the law by imposing medications on residents there.[8] Families and friends of consumers are already aware of the incident that prompted this lawsuit because it was reported in the Anchorage Daily News. Families and friends may seek to know 'what doctors were involved' so as to try to protect their families and friends and DLC should be able to provide that information.

---

[7] Notably, API offers no affidavit in support of this assertion, nor did they cite the appropriate rule.
[8] The Court may take judicial notice that the Alaska Supreme Court has just ruled in *Myers v. API,* Supreme Court No. S-11021 (June 30, 2006) that API was unlawfully imposing psychotropic medications on individuals at API.

Opposition to Entry of Protective Order                                                                      Page 7 of 9
Case No. 3:06-cv-00062 (TMB)

Second, the release of the doctors' names should serve as a deterrent to future violations of the rights of residents at API. One of the purposes of releasing the doctors' names is that other doctors should take notice of that fact, recognize the extreme importance of complying with the rights afforded persons at API. Deterrence is often a useful tool to try to ensure law enforcement.

Finally, the release of the doctors' names gives more clarity and context to the report and leaves less suspicion, not more, with the public. Without the names, the public may wonder, "what do the doctors have to hide." API's position is that the doctors did nothing wrong; the fault is API's failure to have a discharge policy that complies with the law. If that is the case, then "hiding" the doctors' names only makes the public more suspicious of wrongdoing, not less.

Without such a factual basis[9], and given the adverse repercussions of redacting the names, the Court must deny the motion.

## CONCLUSION

The Court must DENY API's request for a Protective Order as it is an inappropriate application of the Federal Rules of Civil Procedure 26(c). Alternatively, a protective order of the nature requested would be a clear interference with and abridgement of DLC's authority, right and duty to issue public reports to protect citizens with mental illness.

>                    DISABILITY LAW CENTER OF ALASKA
>
>    By:    s/Holly J. Johanknecht
>           Sonja D. Kerr, AK No. 0409051
>           Holly J. Johanknecht, AK No. 0511103

---

[9] DLC is concerned that this motion was filed without a factual basis as required by FRCP Rule 11.

Opposition to Entry of Protective Order                                    Page 8 of 9
Case No. 3:06-cv-00062 (TMB)

                                      Disability Law Center of Alaska
                                      3330 Arctic Blvd., Suite 103
                                      Anchorage, Alaska 99503
                                      (907) 565-1002
                                      (907) 565-1000
                                      hollyj@dlcak.org
                                      skerr@dlcak.org

Certificate of Service

I hereby certify that on the 26th day of July, 2006, a copy of this document was served electronically on:

Stacie Kraly
Office of the Attorney General
P.O Box 110300
Juneau, AK 99811
Stacie_kraly@law.state.us

   /s Holly J. Johanknecht
Holly J. Johanknecht