DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Stacie L. Kraly
Chief Assistant Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811
Phone: (907) 465-3600
Attorney for State of Alaska
Alaska Bar No. 9406040

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABILITY LAW CENTER OF ALASKA, <br>     Plaintiff, <br><br> vs. <br><br> ALASKA PSYCHIATRIC INSTITUTE, and RON ADLER, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR, <br>     Defendants. | <br><br><br><br><br><br><br><br><br> Case No. 3:06-cv 00062 (TMB) |

## SECOND OR SUPPLEMENTAL MOTION FOR PROTECTIVE ORDER

**Introduction**

  Alaska Psychiatric Institute, and Ron Adler, in his official capacity as Executive Director (API) filed its First Motion for Protective Order (Shortened Time) on July 25, 2006, the court granted the motion, and after a hearing on July 27, 2006, instructed the parties to brief this matter more thoroughly, specifically requesting briefing on whether the court has the authority to amend the Disability Law Center's (DLC)

investigative report (report). API incorporates in full its First Motion for Protective Order in support of this motion.

**Factual Background**

The salient facts have been set forth in the briefing of API's First Motion for Protective Order and also in the hearing held on July 27, 2006. Those facts will not be restated here. Other relevant facts will be stated in the argument section as necessary.

**Argument**

**A. Does the court have the authority to amend the DLC report?**

API has been unable to find any express authority - statutory or case law - that answers the question of whether the court has the authority to amend the DLC report. There is nothing that says the court can, nor is there anything says that the court cannot. The court's oversight and enforcement role in the enabling statutes and regulations clearly envisions the ability of the court to remedy violations of the process, whether committed by API or the DLC. As an example, there are cases that hold the court can enforce the access provisions of the statutes and regulations or the court can enforce the premise that the DLC is the final arbiter of whether there is probable cause to investigate.[1] These oversight functions support the position that the court would also have the ability to amend a report if there has been an impermissible disclosure of confidential information. The court must have the authority to step in and make those corrections. If the motion for protective order had been to preclude the release of the report because of identifying information related to Mr. Doe, then the question would not be difficult to answer: the court should intervene and correct a report that included a disclosure that is expressly prohibited in the statutes and regulations. That the privacy rights being asserted here are

---

[1] *See* 191 A.L.R. Fed 205 for a discussion of all cases decided under the Protection and Advocacy Act for Mentally Ill Individuals Act of 1986 (PAMII) in federal courts. This annotation and the cases cited therein clearly establish the court's role in enforcing the provisions of the PAMII Act.

for doctors and not the recipient of services makes the decision on the merits less obvious, but in no way changes the fact that the court should have the authority to make that decision in the first place. API submits that the court has the ability to enforce the provisions of the governing statutes and regulations including amending the report to protect the privacy rights of individuals.[2]

### B. Do the API doctors have a privacy interest in keeping their names out of the report?[3]

Although the DLC has authority to investigate and publish reports, it cannot exercise that authority in a manner that violates the constitutional rights of others - here the two doctors.[4] There is no dispute that the citizens of the state of Alaska, including

---

[2] API does not argue that the court would have the authority to change the facts or the conclusions of the report, however, mere administrative corrections to ensure the report does not violate the statutes or the privacy rights of individuals is more ministerial and should be entertained by the court on a case-by-case basis.

[3] Here, the state is requesting that the court interpret a state constitutional provision. API submits that in addressing this issue the court should look to Alaska case law interpreting that provision in order to see if the right must be protected. *See, Smith v. Carrasco*, 334 F. Supp.2d 1094, 1099 (N.D. Ind. 2004) ("Under the federal system, federal courts do not interpret state constitutions, though they may apply settled interpretations of a state constitution established by state courts. Mr. Smith is asserting state constitutional claims as they apply to convicted prisoners, on which there is apparently no state created precedent. "Retaining this claim may require the Court to embark on an interpretation of Indiana's Constitution virtually unguided by state court precedent. As a matter of comity whether the acts in question violate Indiana's Constitution are best left to the province of Indiana's state court judges." *Linnemeier v. Indiana University-Purdue University Fort Wayne*, 155 F. Supp.2d 1044, 1056 (N.D. Ind. 2001))."

[4] *Cf. Falcon v. APOC*, 570 P.2d 469 (Alaska 1977).

these two doctors, enjoy constitutionally protected privacy rights.[5] The state right to privacy is considered to be broader than that provided by the Federal Constitution.[6] Since there is a right to privacy, and assuming the court agrees with API's position above regarding the authority to amend the report, this court must determine whether that right can be overcome. The Alaska Supreme Court recently addressed this threshold in *Myers v. Alaska Psychiatric Institute:*[7]

> We determine the boundaries of individual rights guaranteed under the Alaska Constitution by balancing the importance of the right at issue against the state's interest in imposing the disputed limitation. When a law places substantial burdens on the exercise of a fundamental right, we require the state to articulate a compelling [state] interest and to demonstrate the absence of a less restrictive means to advance that interest. But when the law interferes with an individual's freedom in an area that is not characterized as fundamental, we require the state to show a legitimate interest and a close and substantial relationship between its interest and its chosen means of advancing that interest.[8]

Furthermore, the court in *Falcon*, dispensed with the notion that by simply being in the governmental arena, a person waives their privacy rights.[9] Thus, the fact that these doctors are governmental employees is not enough to override the privacy rights they hold

---

[5] Alaska Const., art. I, sec. 21.

[6] *Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 550 (Alaska 2001); *Messerli v. State*, 626 P.2d 81, 83 (Alaska 1980).

[7] *Myers v. Alaska Psychiatric Institute*, ____ P.3d ____ , No. S-11021 (Alaska June 30, 1006) (Internal citations omitted).

[8] *Id*. at _____.

[9] *Falcon,* 570 P.2d at 474.

under the state constitution without a compelling interest. In order to override the privacy rights afforded these two doctors under the state constitution, the DLC must show a compelling interest in including the names in the report and the absence of a less restrictive means to advance that interest. Neither of these tests can be met by the DLC therefore, the doctors' names should not be included in the report.

In their Opposition to the First Motion for Protective Order, the DLC has provided three reasons why the names are necessary to the report and the privacy rights of the doctors can be overcome:

1. a person who has a loved one being treated at API may desire the name of the doctors;

2. use of the doctors' names should serve as a deterrent to future violations; and

3. including the names of the doctors gives more clarity and context to the report and leave less suspicion, not more, with the public.

None of these reasons supports exclusion rather than inclusion for the following three reasons:

First, the DLC implies that due the recent Alaska Supreme Court decision in *Myers*, there is great suspicion over API. However, the DLC's understanding of the decision is not accurate. The court in *Myers* ruled that a specific statute that has been in effect since 1992 was unconstitutional.[10] There was no allegation or even implication that the doctors were doing anything but following what is presumed to be a constitutional statute. What the court stated was not that the doctors were acting inappropriately but that the courts were not engaging in a thorough enough analysis regarding the best interests of patients before they (the courts) authorize the administration of forced

---

[10] The statute was amended in 2002 to give it corrective amendments based upon SCS CSHB25(JUD).

medication. There is nothing in the decision that implicates the doctors at API or alleges that they did anything wrong. The DLC's implication of wrongdoing on the part of the doctors, amidst misinformation about what the court actually ruled is precisely why the doctors' names should not be included. To include them implicates them which unfairly violates their privacy rights.

       Secondly, API believes that a careful reading of the report shows one of the major findings and recommendations be that API create a policy and procedure that relates to the discharge of a patient who does not want to leave API. If there was no established policy and procedure related to this incident, how can naming them in this report deter the doctors from future conduct? How can a doctor be deterred from engaging in conduct that is not specifically addressed in policy and procedure – this appears to be a classic attempt to put the cart before the horse. Deterrence, if necessary, will be achieved with the development of new policies and procedures, not by naming doctors for failing to follow a procedure that never existed. The purported deterrence is not a compelling reason to abrogate these doctors' privacy interests when there is no specific allegations of wrongful conduct.

       Finally, API disagrees with the concept that the report with the names gives more clarity or context; rather, after reading the report, one is left to wonder who else was involved, why they were not named individually, what their roles were in the discharge plan and process, and what did they do and not do relative to the doctors' orders. This is especially so when the only names that have been spelled out in the report are the doctors' names.

       The three reasons for including the names all militate in favor of excluding them for the precise reasons this motion was brought in the first place. There is an impermissible implication that the doctors are the bad actors in this event – and that is

simply not supported by the report as a whole; the doctors' reputations are at risk and their privacy rights should be protected, absent a compelling reason.

### Conclusion

This court should have the authority to amend the report to ensure that the report meets the standards of the constitution and the statutes that authorize the DLC to issue such a report. To hold otherwise would allow the DLC to issue any report with any information, without redress from state hospitals and agencies. Clearly this is not the intent of the statute. If there is a way to protect the integrity of the report and process, this court has that authority.

The doctors enjoy a constitutionally protected privacy right in Alaska. Before that right can be abrogated, the DLC must show a compelling interest in the disclosure of the names and no less restrictive means to meet that end. Nothing that has been argued before the court meets that threshold – the report does not lose any of its vigor by using "Dr. A" and "Dr. B."[11] The court should issue a protective order that precludes the use of the doctors' names in the DLC report.

Dated this 3rd day of August, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By:   s/Stacie L. Kraly
      Assistant Attorney General
      Office of the Attorney General
      P.O. Box 110300
      Juneau, Alaska 99811
       (907) 465-3600

---

[11] The reference to Dr. B in the redacted version of the report actually identifies him since they state Dr. B's title at API.

          (907) 465-2539
          stacie_kraly@law.state.ak.us
          Alaska Bar No. 9406040

///

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on August 3, 2006, a copy of foregoing was served electronically on the following parties of record:

Holly Johanknecht
Sonja Kerr, Esq.
Disability Law Center of Alaska, Inc.
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

_____
s/Stacie L. Kraly