Sonja D. Kerr AK Bar No. 0409051
Holly J. Johanknecht AK Bar No. 0511103
Disability Law Center of Alaska
3330 Arctic Blvd., Suite 103
Anchorage, AK   99503
(907) 565-1002
(907) 565-1000
hollyj@dlcak.org
skerr@dlcak.org
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Disability Law Center of Alaska,　　　　　) | |
| 　　　　　Plaintiffs　　　　　) | |
| 　　　　　　　　　　　　) | |
| vs.　　　　　) | Case No. 3:06-cv-62 (TMB) |
| 　　　　　　　　　　　　) | |
| Alaska Psychiatric Institute, and Ron Adler　) | |
| in his official capacity as Exec. Director,　　) | |
| 　　　　　Defendant.　　　) | |
| _____) | |

## SECOND OPPOSITION TO ENTRY OF PROTECTIVE ORDER

### FACTS

The facts of this case are generally set forth in DLC's first Opposition to Entry of Protective Order and as stated in the hearing on July 27, 2006.

### ARGUMENT

### I.    THE COURT LACKS AUTHORITY TO REACH THE MERITS OF THE REQUESTED RELIEF BECAUSE RULE 26 DOES NOT APPLY.

The Court has asked the parties to specifically brief the issue of the Court's authority to dictate what DLC could or could not put in its reports under the PAIMI statute. The first issue of the Court's authority is the Court's procedural authority to entertain API's request for a Protective Order. As DLC explained in its first Opposition to Entry of Protective Order, API has

incorrectly filed this Motion for Protective Order. [1]  This case is not in discovery. Therefore, the Court has no authority to grant API a protective order under Fed.R.Civ. P. 26(c), which governs protective orders in discovery disputes. DLC is not attempting to discover anything about the doctors' names but to release those names to the public. Thus, Rule 26 does not apply. This is important because the standard for a protective order under Rule 26 is that the requesting party is asserting that the non-moving party is seeking discovery that is designed for  annoyance, embarrassment, oppression, or that such discovery will cause undue burden or expense. Fed. R. Civ. P. 26(c). Under the rule, a Court can deny discovery or limit discovery accordingly. Discovery is not at issue here.

The only standard that can apply is the standard for a Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b). A Rule 65 motion would require that there be "specific facts shown" by affidavit or a verified complaint that "immediate and irreparable injury, loss or damage will result to the applicant" before the adverse party can be heard in opposition. See *International Association of Fire Fighters, Local 1264 v. Municipality of Anchorage*, 973 P. 2d 1132 (AK 1999) (union sought declaratory judgment and injunction to prevent municipality from releasing municipality names in conjunction with salaries to news organization; disclosure did not violate employees right to privacy.) API has had the opportunity twice now to file their motion under Rule 65 and has not done so.  The Court cannot ignore this difficulty, because the Rule 65(b) standard is one that API simply cannot meet. Under Rule 65, API is required to show a probability of success and irreparable injury and the Court then weighs the relative hardships to see if they tip in favor of the applicant seeking relief. *Lopez v. Heckler,* 713 F. 2d 1432 (9th Cir. 1983). Here the relative hardships do not tip in favor of API..  The Court cannot *sua sponte* simply

---

[1]  Opposition to Entry of Protective Order, pg. 3.

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

"convert" API's motion to one pursuant to Rule 65. Even if the Court did, API has not met Ak.L.R. Rule 65(b) because it has failed to offer any information or affidavits to verify the facts asserted -- that the doctors themselves-- and not API, seek a privacy protection. Thus, the Court lacks any procedural authority by which it can even entertain the motion and any specific verified facts upon which to grant it. Granting such a motion under these circumstances  would constitute reversible error. The Court must deny the motion.

## II.     THE COURT LACKS ANY AUTHORITY TO REGULATE THE CONTENT OF DLC'S INVESTIGATIVE REPORTS.

Assuming that the Court does not deny the protective order on procedural grounds, API also concedes that the Court lacks substantive authority to regulate the content of DLC's investigative reports.[2]  It is important that the Court keep in mind that DLC's responsibility to investigate and to generate reports from investigations is essentially an independent federal authority to investigate. *Wisconsin Coalition for Advocacy v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. WI, 2001). Because of this independent authority, in general, courts have held that to operate effectively, Protection and Advocacy centers such as DLC, are to be given broad discretion under the act to conduct effective, efficient investigations. See, e.g. *Center for Legal Advocacy v. Hammons*, 323 F. 3d 1262 (10th Cir. 2003); *Pennsylvania Protection and Advocacy v. Houstoun*, 228 F. 3d 423 (3rd Cir. 2000); *Mississippi Protection and Advocacy v. Cotton*, 1989 WL 224953 (S.D. Miss., 1989), affmd, 929 F. 2d 1054 (5th Cir. 1991). API contends that the Protection and Advocacy for Individuals with Mental Illness (PAIMI) statutes and regulations allow for a court to become involved in the investigation process and even to remedy violations of that process. While it is true that Courts have become involved to remedy violations of the PAIMI process, courts have historically become involved only when a P & A has asserted a

---

[2] Defendant's Second or Supplemental Motion for Protective Order, page 2.

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

direct violation of the PAIMI regulations and the agency under investigation has resisted access. There does not appear to be any precedent suggesting that a federal court has the authority to dictate the contents of DLC's investigation reports. To do so would intrude on DLC's special role in the protection of the public, especially those vulnerable individuals with mental illness.

API's Motion mentions two examples of instances where courts have become involved in investigations. One example is court enforcement of access authority. The access authority of a Protection and Advocacy agency (P&A), such as DLC, is clearly spelled out in the PAIMI act and regulations. Courts have become involved in disputes where providers have refused to allow a P&A their statutory access authority. Another example mentioned in API's motion is a case where a court became involved when a facility contested a P&A's determination that probable cause existed to investigate.[3] The court held that the P&A was the final arbiter of whether probable cause exists. In both the examples given by API, the court became involved in situations where clear statutory or regulatory guidance existed.  There does not appear to be any situation where a Court became involved in a situation similar to this, at the request of a provider, to dictate a P & A's report content.

A second similarity between the two examples given by API is that the court's decisions favor the protection if individuals with disabilities, over protection of the facility. This is consistent with PAIMI and the mission of P&A agencies like DLC. The purpose of the PAIMI statute is to enable P&A agencies to protect and advocate for vulnerable individuals with mental illness, and to investigate reports of abuse and neglect. Many of these individuals cannot advocate for themselves, precisely because of their mental illness. The PAIMI statute was thus

---

[3] *Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003).

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

intended to protect individuals with mental illness, not to protect providers and attempts to prove otherwise should be viewed with suspicion.

### III.    THE COURT LACKS AUTHORITY UNDER PAIMI TO PRECLUDE DLC FROM INCLUDING THE DOCTORS' NAMES IN THE REPORT AS THESE INDIVIDUALS ARE NOT PROTECTED UNDER PAIMI.

There is no authority for the Court to state what DLC must or cannot include in a report under the PAIMI authority. There are specific statutes and regulations in the PAIMI legislation that instruct P&A agencies about confidentiality requirements which provide some guidance. 42 U.S.C. § 10806 and 42 C.F.R. § 51.45. The fact that PAIMI includes specific provisions dealing with confidentiality, including whose identities must be kept confidential in investigative reports, implies that Congress carefully considered confidentiality issues when drafting this legislation. Notably absent is any concern about the confidentiality of individual actors in an investigation, like these doctors, who were  involved in abuse and neglect investigations.

42 C.F.R. § 51.45 deals in part with public investigative reports and what information, and whose information, must be kept confidential. 42 C.F.R. § 51.45(a)(1) outlines what individuals' information must be kept confidential. There are four categories of people to whom these confidentiality requirements apply, and the doctors do not fall within these categories:

> (i) Clients to the same extent as is required under Federal or State laws for a provider of mental health services; (ii) Individuals who have been provided general information or technical assistance on a particular matter; (iii) Identity of individuals who report incidents of abuse or neglect or furnish information that forms the basis for a determination that probable cause exists; and (iv) Names of individuals who are residents and provide information for the record.

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

The doctors are not clients, they are employees. Only one of these categories has even the potential to include a mental health provider, and that is only where it is the individual who reported the incident of abuse and neglect. Since neither of the individuals whose names are at issue made a report of abuse or neglect, DLC is under no obligation to keep their identities confidential.

In addition, PAIMI regulations specifically allow DLC to provide the results of any investigation to the public; 42 C.F.R. 51.45(b) states,

> "Nothing in this subpart shall prevent the P & A system from: (1) Issuing a public report of the results of an investigation which maintains the confidentiality of the individuals listed in paragraph (a)(1) of this section or, (2) Reporting the results of an investigation which maintains the confidentiality of individual service recipients to responsible investigative or enforcement agencies should an investigation reveal information concerning the facility, its staff, or employees warranting possible sanctions or corrective action. This information may be reported to agencies responsible for facility licensing or accreditation, employee discipline, employee licensing or certification, or criminal prosecution.

This section makes special mention of maintaining the confidentiality of the individuals listed in § 51.45(a) when releasing reports, but again the regulation does not direct P&A agencies to keep confidential any other individuals when releasing their reports.

Moreover, this section explains that the P & A system may issue its report to "agencies responsible for facility licensing or accreditation, employee discipline, employee licensing or certification or criminal prosecution." 42 C.F.R. 51.45(b)(2). Thus, dissemination of the API report to the various governmental officials is well within the anticipation of the statute. While not explicitly stated, this section also seems to imply that the report would include information that would identify individuals who might be subject to certification, employee discipline,

employee licensing or criminal prosecution. Without such identifying information, a release of a report to these agencies would be useless. The purpose of forwarding such information maintains the goal of the PAIMI act- protection of some of the most vulnerable of our citizenry, individuals with mental illness who may need in-patient psychiatric care.

The PAIMI regulations specifically underscore the expectation that P&A agencies will write <u>public</u> reports[4]. The purpose of such <u>public</u> reports is to obviously alert the public to instances of abuse and neglect in order to prevent similar incidents from occurring in the future, thereby protecting individuals with mental illness. The purpose of the PAIMI statutes is to enable P&A agencies to protect and advocate for individuals with mental illness. There may be many times when DLC does not name individual actors involved in an investigation. But there may also be times when DLC includes the names of individual actors for protection of the public[5]. Allowing facilities and mental health providers to dictate the contents of investigative reports, or to perceive that this Court has some authority to restrict such contents, especially when all of the confidentiality requirements of PAIMI have been met, does not allow DLC to fulfill its mandate and mission of protecting and advocating for individuals with mental illness. The Court cannot rely on the PAIMI statute for authority to restrict DLC's right to name the doctors in the report.

## IV.    API DOCTORS LACK A PRIVACY INTEREST SUFFICIENT TO OVERCOME PAIMI.

API claims that under the Alaska Constitution Article I, Section 22[6], the doctors have a constitutionally protected right to privacy that would prevent DLC from including their names in

---

[4] 42 C.F.R. § 51.45(b).
[5] Nothing in the Court's order of April 21st specifically addresses disclosure of the names of the doctors; it addresses only "redisclosure" of videotapes and documents gathered in the course of the investigation.
[6] API's motion incorrectly cites the appropriate constitutional provision as art. I, sec. 21 on page 4, footnote 5. The correct citation is art. I, sec. 22.

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

its investigative report. API urges the court to interpret a state constitutional provision and in doing so apply state law to their analysis. The Court should not do so because API's privacy claim analysis is flawed.

While it does not appear that a court has specifically addressed a state constitutional claim in a PAIMI situation, various courts examining state law challenges to the PAIMI Act have generally held that the PAIMI act preempts state statutes. See, e.g. *Pennsylvania Protection and Advocacy v. Houstoun*, 228 F. 2d 423 (3rd Cir. 2000) (PAIMI Act preempts state statute protecting confidentiality of peer review records); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wi. 2001) (preemption of state laws that might apply to nursing home records); *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 2001 WL 1809404 (S.D. Iowa 2002) (ordering disclosure to the P & A of investigative report of the state licensing and certification agency despite state law prohibiting such release).

In support of its claim, API cites *Falcon v. APOC*, 570 P.2d 469 (Alaska 1977). In *Falcon*, the privacy issue related to a doctor's disclosure of all patients who had paid him $100 or more dollars in relation to a conflict of interest charge. The court held that given the specialized nature of the doctor's practice (abortions and/or contraceptive matters) and the potentially sensitive implications a visit to such a doctor could lead to, the Alaska Constitution's privacy rights would prohibit such a disclosure to protect the privacy not of the doctor, but of the patients he served.

However, "[t]he right to privacy is not absolute; it protects 'intimate' or 'sensitive' personal information … which, if disclosed even to a friend, could cause embarrassment or anxiety." *International Association of Fire Fighters, Local 1264 v. Municipality of Anchorage*, 973 P.2d 1132, 1134 (Alaska 1999) (citing *Doe v. Alaska Superior Court, Third Judicial*

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

*District*, 721 P.2d 617, 629 (Alaska 1986)). The disclosure prohibited in *Falcon* is quite dissimilar from the one at issue here. In *Falcon*, the disclosure of a patient's name could imply that individual had an abortion, an extremely intimate and sensitive topic.

In this case, the disclosure of a doctor's name in the report, especially in the context in which the names were included, would indicate that the doctors were involved in the incident, that they discussed what course of action to take, and what course of action they recommended API staff take. This information cannot be considered "intimate" or "sensitive personal information" under the meaning of those terms in Alaska case law. This is especially true since at least one of the doctors' names is already public – it is on the API website.

The information involved in this case is not intimate, is true, and in fact, the origin of the information was from interviews DLC conducted with the API doctors with the knowledge of API's counsel. In those interviews with DLC, the doctors did not indicate in any way that they were embarrassed or anxious in regards to their participation in the issue. Nor have the doctors provided such information to this Court. There is thus absolutely no factual record upon which the Court may conclude that the doctors do, in fact, have a factual basis to claim a privacy interest. Notably, the Court should be aware the treating psychiatrist stated that the recommendation to contact the police regarding John Doe was the correct course of action. The police report includes the name of this doctor, thus supporting what DLC found in the interviews.

Before this Court, API has set forth no affidavit or document from either of the two doctors asserting what API claims is a privacy interest by these two individuals. At a minimum, one would expect that such an affidavit, by Mr. Adler or the doctors (under seal) would be offered to the Court in support of this motion. Since there is no factual evidence to establish that

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

the doctors were embarrassed or are anxious about their participation in the incident, and the information at issue is not "intimate" or "personal" information about the doctors, there is no factual basis to support such a privacy claim. The Court lacks any authority to conclude that the inclusion of the doctors' names in the report amounts to even a probability of success that inclusion of the names violates a constitutional right to privacy held by the doctors and there is no need to make any further analysis into this claim.

API suggests that DLC has a "burden" to establish a "compelling interest" for including the names of the doctors in the report. That standard is not the appropriate standard, for nothing in the PAIMI statute or regulations so require. Alaska case law as to privacy concerns is subordinate to DLC's federally mandated requirements under the PAIMI act. Otherwise, followed to its logical conclusion, any individual, any provider, any agency, any corporation could, based on API's view claim a " right to privacy" which would  obstruct the public reporting that DLC is statutorily permitted to provide to protect individuals with mental illness. DLC does not have any burden of showing a "compelling interest" as to why it wants to release the doctors' names. *Myers v. API*, 138 P.3d 238, No. S-11021 (Alaska June 30, 2006) concerns the exercise of a fundamental right and that requires a state government to show a compelling state interest in interfering with that right. DLC is not a state governmental agency; it is a non-profit agency with the duties and responsibilities mandated by the federal PAIMI act.

Moreover, Protection and Advocacy agencies, such as DLC, have a protected First Amendment right to communicate and consult with the population it was created to serve. *Robbins v. Budke*, 739 F. Supp. 1479 (D.N.M. 1990) found that restrictions imposed by a psychiatric facility violated the P & A's rights in light of the residents' special needs for outreach and services.  The Court reasoned that, therefore, the P &A had have broad discretion to respond

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

to the needs and limitations to ensure effective advocacy. See, also, *Developmental Disabilities Advocacy Center, Inc. v. Melton,* 689 F. 2d 281, 287 (1st Cir. 1982). API's motion spends much time analyzing DLC's stated reasons for including the names of the doctors in the reports but misses the overall point of DLC's mission to protect these vulnerable individuals.

Three reasons considered by API are: (1) a person who has a loved one being treated at API may desire the name of the doctors, (2) use of the doctors names should serve as a deterrent to future violations; and (3) including the names of the doctors gives more clarity and context to the report and leaves less suspicion with the public.

DLC frequently is in contact with the friends of family of API patients. These individually are justifiably concerned about the treatment their loved ones are receiving. Given the recent media attention in the *Myers* decision, family members may have increased concerns. DLC never implied that the doctors were doing anything legally incorrect before the *Myers* decision was delivered or after. Rather, it is simply a fact that  because of the recent *Myers* decision, there is increased attention being paid to the treatment delivered by API by the public. This attention often translates to concern for those who have loved ones with mental illness receiving treatment at API. If contacted about this incident by such an individual, DLC believes that it is in the best interest of the public and its advocacy responsibilities that DLC be able to disclose the identities of the doctors involved. Withholding such information would only heightened the worry of loved ones whose family member is at or scheduled to go to API and who would not know which doctors played any role in this situation. DLC would not be able to explain the roles these particular doctors played in this situation if the protective order is granted.

API is correct in stating that a finding of the report is an absence of established policy to deal with this type of situation, and it would be improper to state that the doctors are guilty of

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

failing to follow a policy that does not exist, and this report does not do so. However, this report reaches more than one conclusion about this incident. Another primary conclusion of the report is that API staff, doctors included, failed to follow existing policy and state law. Specifically, this included reporting incidents of abuse or neglect to Adult Protective Services, and completing an Unusual Occurrence Report regarding the incident.  In regards to these findings, the doctors failed and including their names will hopefully deter other doctors from making the same errors. Including the names also should alleviate concerns of potential or current API residents and their loved one that "all the doctors" at API were involved in this incident and therefore, that individuals with mental illness cannot trust 'any' of the doctors at API.

DLC believes that including these names gives the report more context. One doctor and the medical director played a role in the situation and it is hopefully a limited situation.   These doctors, who are mandatory reporters as to APS and Unusual Occurrence Report, instead of contacting APS, determined that the appropriate response was to contact the police to have them come and arrest Mr. Doe. This is an important fact for the public to be aware of and consistent with DLC's mission to protect individuals with mental illness who are extremely vulnerable. This decision was not one of lower level employees, but of a psychiatrist and the medical director of API. Potential API residents and current residents who will have a choice of doctors, should be able to know that these were the doctors involved.

## CONCLUSION

API has failed to provide the court with any authority to regulate the content of DLC's investigative report. In addition, the PAIMI act and regulations regarding confidentiality do not include a requirement that provider's be kept confidential unless they reported the abuse or neglect, which did not occur here. Furthermore, the Alaska Constitution's right of privacy does

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER

not apply in this situation as the information at issue is not intimate or sensitive personal information. Finally, API has yet again failed to file its motion under the correct rule and failed to follow the procedural requirements when filing. For these reasons, the Defendants' Motion for Protective Order must be DENIED.

Dated this 10th day of August 2006, at Anchorage Alaska.

DISABILITY LAW CENTER OF ALASKA

By:      /s Sonja D. Kerr
Sonja D. Kerr, AK No. 0409051
Holly J. Johanknecht, AK No. 0511103
Disability Law Center of Alaska
3330 Arctic Blvd., Suite 103
Anchorage, Alaska 99503
Tel: (907) 565-1002
Fax: (907) 565-1000
hollyj@dlcak.org
skerr@dlcak.org

**Certificate of Service**

I hereby certify that on the 10th day of August, 2006, a copy of this document was served electronically on:

Stacie Kraly
Office of the Attorney General
P.O Box 110300
Juneau, AK 99811
Stacie_kraly@law.state.us

   /s Sonja D. Kerr
Sonja D. Kerr

SECOND OPPOSITION TO ENTRY
OF PROTECTIVE ORDER